UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MILENKO PAVLIKA,

    Plaintiff,

v.                                                                CASE NO. 6:17-cv-650-Orl-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for a period of disability and disability insurance benefits. Following an administrative hearing held on July 23, 2015, the assigned Administrative Law Judge ("ALJ") found Plaintiff not disabled from May 10, 2012, the alleged disability onset date, through August 13, 2015, the date of the ALJ's decision. (Tr. 23-60, 159.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is due to be **REVERSED and REMANDED**.

    **I.**    **Standard**

The scope of this Court's review is limited to determining whether the

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 16.)

1

Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because she failed to properly evaluate the medical evidence of record

when she found at step three of the sequential evaluation process[2] that Plaintiff's back impairment did not meet or medically equal the requirements of Listing 1.04(A). The Commissioner responds that the evidence does not establish listing-level severity and substantial evidence supports the ALJ's decision that Plaintiff can perform sedentary work.

At step two of the sequential evaluation process, the ALJ found that Plaintiff's degenerative disease of the spine with radiculopathy was a severe impairment. (Tr. 25.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26.) The ALJ explained:

> [T]he medical evidence in the record does not contain the precise signs, diagnostic findings, and objective observations required by [Listing 1.04(A)].
> . . .
> In the instant case, there are insufficient quantitative measurements to meet [L]isting 1.04. Although on a few occasions the claimant's clinicians have reported positive straight-leg raising tests in the seated position, none of the doctors who reported these findings provided any quantitative degrees at which this positive result occurred. (Exhibit 4F/6, 8; Exhibit 6F/19). Notably, the evidence also fails to establish any evidence of atrophy of any of the claimant's muscle groups. Moreover, the record also contains an analysis of the majority of the medical evidence conducted by Debra Troiano, M.D., a State agency medical consultant. Dr. Troiano reviewed the claimant's medical record and opined that the claimant's impairment did not meet listing levels. (Exhibit 3A/9).

---

[2] The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1505(a), 404.1520(a).

> Although the record contains a few additional records not reviewed
> by Dr. Troiano, this newly submitted evidence is largely duplicative of
> the prior evidence in the record. (Exhibit 8F; Exhibit 9F). Ultimately,
> this subsequent evidence does not contain any evidence that would
> suggest the claimant's degenerative disease of the spine meets
> [L]isting 1.04.

(*Id.*)

The Court agrees with Plaintiff that the ALJ's findings at step three of the sequential evaluation process are not supported by substantial evidence. Listing 1.04(A) provides:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc
> disease, facet arthritis, vertebral fracture), resulting in compromise of
> a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.     Evidence of nerve root compression characterized by
> neuro-anatomic distribution of pain, limitation of motion of the spine,
> motor loss (atrophy with associated muscle weakness or muscle
> weakness) accompanied by sensory or reflex loss and, if there is
> involvement of the lower back, positive straight-leg raising test
> (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A) (emphasis in original). Further, the preamble to the listing provides, in relevant part:

> Examination of the spine should include a detailed description of
> gait, range of motion of the spine given quantitatively in degrees from
> the vertical position (zero degrees) or, for straight-leg raising from
> the sitting and supine position (zero degrees), any other appropriate
> tension signs, motor and sensory abnormalities, muscle spasm,
> when present, and deep tendon reflexes. Observations of the
> individual during the examination should be reported; e.g., how he or
> she gets on and off the examination table. Inability to walk on the
> heels or toes, to squat, or to arise from a squatting position, when
> appropriate, may be considered evidence of significant motor loss.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(E)(1).

Here, the medical evidence indicates the presence of a large herniated nucleus pulposus (Tr. 148, 247, 262, 268, 270, 272, 274, 276, 278, 281, 288, 294, 339, 362, 386, 388, 393, 400), moderate spinal stenosis (Tr. 290, 296, 400), and degenerative disc disease (Tr. 247, 263, 294, 339, 362), resulting in compromise of a nerve root (Tr. 247, 281, 288, 294, 296, 339, 362, 393). It further indicates that the severe nerve root compression (Tr. 247, 288, 290, 386, 400) is characterized by neuro-anatomic distribution of pain (Tr. 149, 247, 249, 256-57, 270, 276-77, 280, 339, 386, 388-89), limited range of motion (Tr. 262, 269, 271, 273, 289, 341-42, 389, 399), muscle weakness (Tr. 257, 261, 268, 274, 315, 372, 384, 395) accompanied by sensory or reflex loss (Tr. 262, 276, 288-89, 339-40, 386, 388-89, 392-93, 399), and positive straight-leg raising test in the sitting and supine positions[3] (Tr. 149, 269, 271, 273, 275, 277, 279, 281, 289, 314, 315, 340, 367, 385, 389, 393, 396, 399). The evidence also demonstrates antalgic and/or slow gait (Tr. 261, 273, 275, 277, 281, 289, 367, 372, 389, 393, 395-96, 399), difficulty or inability to walk/stand on heels and/or toes (Tr. 250, 340, 365, 399), difficulty getting up from a chair (Tr. 389), muscle spasms (Tr. 271, 345, 393), and deep tendon reflexes (Tr. 281).

---

[3] The supine straight-leg raising test, also known as Lasegue test, was positive at 40 degrees on the left on June 27, 2012 (Tr. 315), at 50 degrees on the left and 70 degrees on the right on October 2, 2013 (Tr. 340), and at 30 degrees on the left and 60 degrees on the right on July 9, 2014 (Tr. 393).

Despite such evidence, the ALJ determined that the record did "not contain the precise signs, diagnostic findings, and objective observations required" by the listing. (Tr. 26.) While the ALJ correctly observed that Plaintiff's positive straight-leg raising test in the *seated* position had not been quantitatively described in degrees, his *supine* straight-leg raising test had been so described on at least three occasions[4] (*see* Tr. 315, 340, 393), and there are numerous references in the record indicating positive findings on the straight-leg raising test in both the seated and the supine positions.

The Commissioner points out that the preamble to the listing provides that the "[e]xamination of the spine *should* include a detailed description of . . . range of motion of the spine given quantitatively in degrees from the vertical position (zero degrees) or, for straight-leg raising from the sitting and supine position (zero degrees)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(E)(1) (emphasis added). The Court does not read this language as *requiring* a description of the results of a straight-leg raising test in degrees for both the seated and the supine positions. *Cf. Cumella v. Colvin*, 936 F. Supp. 2d 1120, 1133-34 (D. S.D. 2013) ("Dr. Mills' examination contains a sitting straight leg raising maneuver, together with a number of other flexion and extension maneuvers. . . . This evaluation complied with the examination of the spine contemplated by Appendix 1, 1.00(E)(1). No

---

[4] Of note, Dr. Troiano, on whose opinions the ALJ relied at least in part, noted that Plaintiff's straight-leg raising test was "positive [on the] left at 50 degrees and [on the] right at 70 degrees in [the] supine position." (Tr. 80.)

6

treating or consulting physician challenged Dr. Mills' opinions because of the absence of a supine leg raising test. Discounting Dr. Mills' opinions on this basis is without merit. Dismissing Dr. Mills' examination and opinions because of the absence in the record of a particular test which the ALJ thought should be performed is wrong.").

Moreover, this is not a case where there are only isolated instances of positive straight-leg raising tests or where the positive findings on the test have never been quantitatively described in degrees. On this record, the mere fact that Plaintiff's positive straight-leg raising tests in the *seated* position have not been described in degrees, which does not appear to be a requirement under the listing, in no way undermines the other positive findings on examination. Furthermore, as explained below, the rest of the reasons provided by the ALJ for finding that Plaintiff's impairment did not meet or medically equal Listing 1.04(A), are not supported by substantial evidence.

For example, the ALJ noted the opinion of Dr. Troiano, a State agency non-examining consultant, that Plaintiff's impairment did not meet a listing. (Tr. 26, 80 ("He does not meet listing levels . . . .").) However, "[t]he opinion of a non-examining physician 'taken alone' does not constitute substantial evidence to support an administrative law judge's decision." *Huntley v. Soc. Sec. Admin.*, 683 F. App'x 830, 832 (11th Cir. 2017) (per curiam). Moreover, as the ALJ acknowledged, "the record contain[ed] a few additional records not reviewed by

Dr. Troiano" (Tr. 26). *See Cumella*, 936 F. Supp. 2d at 1132 ("Consulting physicians, who did not examine the claimant, should be given less weight especially if those sources did not have access to relevant medical records, including relevant medical records made after the date of evaluation.") (internal quotation marks omitted). Although the ALJ stated that "this newly submitted evidence [was] largely duplicative of the prior evidence in the record . . . [and did] not contain any evidence that would suggest the claimant's degenerative disease of the spine [met] [L]isting 1.04," (Tr. 26), the ALJ's characterization of the subsequent medical evidence is inaccurate.

The medical records dated after Dr. Troiano's November 18, 2013 opinion generally indicate worsening of Plaintiff's condition. (*See, e.g.*, Tr. 389 ("Getting up from a chair was difficult because of pain. Gait was slightly abnormal, he walked very carefully and gingerly. Range of motion, with forward flexion[,] was difficult. Strength of [the] left leg [was] difficult to assess because of pain. . . . Sensation was decreased on monofilament wire testing of the left [] foot. . . . Again advised patient that he should follow up with a specialist, also in light of worsening left leg pain and numbness[.]"), 392-94 ("Now, a new symptom involves numbness in his right first toe. . . . Strength in both legs was difficult to assess because of his pain. Sensation somewhat diminished to light touch on the lateral aspects of both legs, slightly more on the left. . . . I warned patient on his chronic pain and nerve involvement, that without correction or surgery, some

8

of these symptoms may become permanent."), 395-96 ("This unfortunate patient . . . tells me that his pain is worsening . . . and the amount of pain med[ication] he is taking now[] is not as effective as it was before. . . . He now walks with [a] limp. He is unable to stand or sit for any long period of time . . . greater than 10 minutes. . . . Left leg is starting to feel weaker. . . . Pain prevented patient from performing some of the lower extremity strength tests.").) Because the subsequent records indicate worsening of Plaintiff's condition, the ALJ erred in relying on Dr. Troiano's earlier opinions and in finding that the additional records were duplicative.

The ALJ also noted that the evidence "fail[ed] to establish any evidence of atrophy of any of the claimant's muscle groups." (Tr. 26.) However, under the listing, motor loss can be shown either by atrophy with associated muscle weakness or by muscle weakness. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A). In other words, atrophy need not be shown where, as here, there is evidence of muscle weakness. (*See* Tr. 257, 261, 268, 274, 315, 372, 384, 395.) In addition, as stated in the preamble to the listing, motor loss can also be shown by, *inter alia*, inability to walk on heels or toes. Here, the evidence shows, *inter alia*, difficulty or inability to walk/stand on heels and/or toes, difficulty getting up from a chair, and slow or antalgic gait. (*See, e.g.*, Tr. 250, 261, 273, 275, 277, 281, 289, 340, 365, 367, 372, 389, 393, 395-96, 399.) Based on the foregoing, the ALJ's findings at step three are not supported by substantial evidence.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** for further proceedings consistent with this Order.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on July 13, 2018.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record